# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**ATLANTIS WATER SOLUTIONS, LLC**,<br><br>Debtor. | Case No. **18-60060-7** |
| **STEVEN BALDWIN and SHELLEY BALDWIN,**<br><br>Plaintiffs.<br><br>-vs-<br><br>**ATLANTIS WATER SOLUTIONS, LLC and IOFINA RESOURCES INC,**<br><br>Defendants. | Adv. No. **18-00016-BPH** |

### MEMORANDUM of DECISION

At Butte in said District this 5th day of November, 2018.

### INTRODUCTION

This matter involves cross motions for summary judgment filed pursuant to Civil Rule 56[1] and Rule 7056 filed by Plaintiffs Steven and Shelley Baldwin ("Baldwins"), and Defendants

---

[1] Unless specified otherwise, all "Civil Rule" references are to the Federal Rules of Civil

1

Atlantis Water Solutions, LLC ("Atlantis") and Iofina Resources, Inc. ("Iofina"). Baldwins initiated an action against Atlantis and Iofina in Montana's Fifteenth Judicial District Court, Roosevelt County in early 2017. In that action, Baldwins alleged that Atlantis had breached a contract with them, and that Atlantis was the alter ego, instrumentality, and agent of Iofina. The action sought damages for breach of contract, and a declaration that Iofina was liable for any judgment entered against Atlantis. The action was removed to this Court shortly after Atlantis filed its petition for relief under Chapter 7. Following a pre-trial conference, Baldwins, Atlantis and Iofina stipulated and consented to entry of a final Order or judgment by this Court.

According to Baldwins' Motion, they seek as a matter of law, a determination that Iofina is liable for all actions of its co-defendant and subsidiary, Atlantis. The Baldwins' Motion for Summary Judgment, filed August 28, 2018, is accompanied by a statement of undisputed facts and a supporting brief.[2] Defendants filed a competing Motion for Summary Judgment on the same day, arguing that they were entitled to summary judgment on Baldwins' claim for piercing Atlantis' corporate veil because Iofina and Atlantis complied with the requirements of Montana law pertaining to the operation of LLCs, and because Iofina did not act in bad faith. Atlantis and Iofina also argue 11 U.S.C. § 502(b)(6) limits the amount of the Baldwins' damages against Atlantis, and request summary judgment on this issue as well. Defendants' motion for summary judgment is accompanied by a statement of undisputed facts and a supporting brief.[3]

---

Procedure, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] The Baldwins' Motion, Statement of Uncontroverted Facts and Summary Judgment Brief are filed at ECF Nos. 16, 17, and 18. Atlantis and Iofinas' Response is at ECF No. 23. Baldwins' Reply is at ECF No. 24.

[3] Atlantis and Iofina's Motion, Statement of Uncontroverted Facts and Summary Judgment Brief are filed at ECF Nos. 19, and 20. Baldwins' Response is at ECF No. 21. Atlantis and

Both parties responded to the other parties' motions and filed statements of genuine issues in accordance with Mont. LBR 7056-1(a). However, neither statement of genuine issues precludes summary judgment.[4] For the reasons discussed below, the Baldwins' Motion is denied; Defendants' Motion is granted.

## UNDISPUTED FACTS

Iofina is engaged in the exploration and production of iodine. Iofina organized Atlantis in Delaware in 2011 and in Montana in 2013. Iofina has always been the sole member of Atlantis and Atlantis has always been a member-managed LLC. As a single-member LLC, Atlantis always operated informally and without an operating agreement. Atlantis has always been in good standing in Montana and filed its annual reports and maintained a registered agent.

Atlantis was established to pursue the development of a fresh water depot in eastern Montana to serve the oil and gas industry in the Bakken. Atlantis' business plan was to take water from the Missouri River near Culbertson, Montana, and distribute it from a depot that would accommodate commercial tanker trucks. Iofina established Atlantis for the water depot project because the project was outside of Iofina's core business, and because Iofina was in discussions with a large oil and gas services company regarding a strategic partnership in the project and Iofina anticipated that the strategic partner might eventually acquire all or part of the new entity.

---

Iofinas' Reply is at ECF No. 25.

[4] Baldwins dispute facts 10, 13, 19, 24 and 29, and partially dispute fact 12 included in Atlantis and Iofinas' Statement of Uncontroverted Facts. *See* ECF No. 22. These facts are not material to the Court's analysis of the competing Motions.

Iofina's COO, Forest Dorn, was designated as Atlantis' President and from time to time he signed documents and correspondence on behalf of Atlantis in that capacity. Atlantis never had its own bank account or independent source of funds because it never generated any revenue. When Forest Dorn received a paycheck, it was signed by Iofina. Iofina provided Atlantis with operating funds and paid bills and other obligations incurred by Atlantis in connection with developing the water depot project. Atlantis' operations consisted mainly of its attempts to secure the necessary resources and entitlements (water rights, right of way, and real property) for its fresh water depot operation. The assets in the Atlantis project included the leases, right-of-way easements, various engineering reports and feasibility studies, and surveys. Iofina provided the capital that was used to pay for these services and acquire these assets.

Atlantis did not file its own tax returns. Instead, it filed a consolidated tax return with Iofina. Throughout Atlantis' existence, no corporate minutes or resolutions were generated. Atlantis had no credit. Atlantis had no balance sheets. Atlantis never applied for any loans. Atlantis' phone number was actually Iofina's phone number. Atlantis never had a website and never opened its own bank account. Every person that met with the Baldwins, before and after the agreements were executed, was an Iofina employee. The checks that the Baldwins received from Defendants originated from Iofina. The 1099's that the Baldwins received from Defendants were sent by Iofina. All emails and correspondence to Steve Baldwin were sent by Iofina employees on Iofina letterhead.

Atlantis entered into an Option Agreement with the Baldwins effective May 30, 2013. The Option Agreement gave Atlantis the option of entering into a Surface Use Agreement to lease a surface area of the Baldwins' property along the Missouri River as a diversion point and pump location. It also gave Atlantis the option of entering into a Right of Way Agreement to run

underground pipes across the Baldwins' property from the river to the depot site, which would be located on a nearby property. The initial term of the option was one year. Iofina described the water depot on Baldwin's property as "Iofina's fresh water resource in the state of Montana in 2013" and as the "Atlantis Water Project."

On July 8, 2013, the Baldwins and Atlantis entered into a Surface Agreement whereby Atlantis agreed to pay the Baldwins a sum of $8,000.00 per month beginning on January 1, 2014 for a period of 120 months (10 years) to rent the Baldwins' land in order to build a pump station, to gain easements, and to use the surface land for water processing operations. In conjunction with the Surface Agreement, the parties entered into an Option Agreement, which was subsequently amended, that granted Atlantis the right and option to obtain a lease and access to the Missouri River on the property. The Baldwins were represented by counsel in the negotiation of the agreements they entered with Atlantis.

The Atlantis' project in Montana was dependent upon receiving a water permit from the Montana Department of Natural Resources and Conservation ("DNRC"). Around the same time that Atlantis entered into the Surface and Option Agreements with the Baldwins, it applied to the DNRC for a water permit. The Baldwins understood that Atlantis did not yet have a water permit, and that getting the permit was critical to the viability of the water project. The permitting process was expected to take six months to one year but wound up taking significantly longer due to administrative issues and a third-party objection to the application, that resulted in a contested case hearing before the DNRC. As a result of the delays, in mid to late 2014 Atlantis and the Baldwins entered into a series of agreements to extend the Option Agreement.

As the end of 2014 approached, Atlantis was still waiting on a final decision from the DNRC on the water permit. The Baldwins, through their counsel, indicated that they would not agree to extend the Option Agreement any further and that Atlantis would either need to exercise the option (and pay the required access fee of $175,000) or lose it. Atlantis exercised the option on or around January 6, 2015, and paid Baldwins $175,000.

Approximately 6 months later, Atlantis' water permit application was denied by the DNRC. The denial was based on a change in DNRC policy. The policy change was made after Atlantis had filed its application. The policy change was not foreseeable. Under the policy change, letters of intent from future purchasers of the water were no longer sufficient to satisfy the statutory requirement that the applicant had a "beneficial use" for the water. On or around July 1, 2015, Atlantis filed a petition for judicial review of the DNRC's decision in the Montana First Judicial District Court. As of December 31, 2015, the Atlantis project was operating at a loss of $419,263.

Throughout the DNRC permitting and judicial review process, Steve Baldwin told Forest Dorn that the Baldwins shared Dorn's frustration with the permitting process and appreciated Atlantis' commitment to the project notwithstanding the difficulties it was encountering. Steve Baldwin also assured Dorn that the Baldwins would "work with" Atlantis and/or Iofina if Atlantis was unable to get a water permit. On August 1, 2016, the District Court affirmed the DNRC's denial of the water permit.

Following the District Court's decision, Dorn called Steve Baldwin to inform him that the District Court affirmed the DNRC's denial of the water permit and of Atlantis' decision to abandon the water project. Dorn also said that Atlantis would not be making any further payments and sent the Baldwins a proposed release to sign. Based on his previous discussions

with Steve Baldwin, Dorn assumed that the Baldwins would sign the release and not demand any additional payments. A couple of weeks later Dorn received a letter from the Baldwins' counsel demanding that Atlantis and Iofina meet all obligations under the agreements.

Atlantis made a total of 32 monthly payments of $8,000 each on the Surface Agreement, beginning in January of 2014 and ending in July of 2016, totaling $216,000. All told, Atlantis paid the Baldwins $459,000 in option money, fees and rents under the Option Agreement, Surface Use Agreement, and Right of Way Agreement. There are 88 months, and a balance of $704,000, remaining on the Surface Agreement. In addition to the above, the Baldwins contend that additional fees are owed under the Right of Way Agreement. Other than some soils testing and surveying, Atlantis never used, took possession of the Baldwins' property, or constructed any improvements.

The Baldwins admit and concede that they have no reason to believe that Iofina used Atlantis as a subterfuge, or used Atlantis to defeat public convenience, commit crime, justify wrong or perpetuate a fraud. The Baldwins also admit and concede that Atlantis and Iofina were not out to cheat them.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*; *see also Russell v. Daiichi–Sankyo, Inc.*, 2012 WL 1793226 (D.Mont. May 15, 2012).

Where the moving party has met his initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.*

In evaluating the appropriateness of summary judgment, the Court must first determine whether a fact is material; and if so, it must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the Court. As to materiality, the applicable substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes which are irrelevant or unnecessary to the outcome are not considered. *Anderson*, at 248.

If a fact is found to be material, summary judgment will not lie if the dispute about that fact is genuine. If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment should not be granted. *Id.* In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. Though

the *Anderson* Court stated that at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial, it also stated that if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249–50. In other words, the non-moving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts.*"* *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## CONTENTIONS of the PARTIES

The Baldwins seek judgment as a matter of law that Iofina is the alter ego of Atlantis and is thus liable for all actions of its wholly owned subsidiary, Atlantis.

Defendants seek judgment as a matter of law that Iofina is not the alter ego of Atlantis, that Iofina and Atlantis complied with the requirements of Montana law pertaining to the operation of LLCs, and Iofina did not act in bad faith. Atlantis also seeks judgment as a matter of law that the Baldwins' damages are limited pursuant to 11 U.S.C. § 502(b)(6).

## APPLICABLE LAW and DISCUSSION

As a general rule, members of a limited liability company ("LLC") are not subject to personal liability for obligations of the company. Mont. Code Ann. ("MCA") § 35-8-304(1).

9

Despite the plain language of this statute, common law principles associated with piercing the corporate veil, and disregarding the corporate form, have been applied to LLCs.  This Court engaged in this analysis, and provided a thorough discussion of the applicable cases in *Businger v. Storer (In re Storer)*, 380 B.R. 223, 233-34 (Bankr. D. Mont. 2007).

Baldwins' urge this Court to follow the analysis outlined *In re Storer*, and apply the traditional two-prong test to determine whether the corporate veil can be pierced.  The test requires, first, that the defendant must be shown to be an alter ego, instrumentality, or agent of the corporation.  *See Peschel Family Trust v. Colonna*, 75 P.3d 793, 796–97 (Mont. 2003) (abrogated on other grounds by *Boyne USA, Inc. v. Lone Moose Meadows, LLC*, 235 P.3d 1269, 1273 (Mont. 2010)).  Second, substantial evidence must exist that the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong or perpetrate fraud." *Id*. at 799.  Baldwins urge this Court to apply this two-prong test to Atlantis.  *See* ECF No. 18, p. 13.

Atlantis and Iofina counter that the Montana Supreme Court's holding in *Weaver v. Tri-County Implement, Inc.*, 2013 MT 309, 372 Mont. 267, 311 P.3d 808, sets forth the applicable standard when a party seeks to "pierce the veil" of an LLC and reach its members.  With regard to LLCs, the Montana Supreme Court has held that piercing the veil may be appropriate if a member "operates an LLC as an empty shell to perpetuate fraud and avoid personal responsibility." *Weaver*, supra, 2013 MT at ¶ 18.  Atlantis and Iofina argue that this Court must determine: (i) whether Atlantis and its sole member, Iofina, complied with the formalities required of LLCs under Montana law; and, (ii) whether Iofina used Atlantis as a subterfuge to perpetuate fraud and avoid personal liability.

In urging the Court to rely on *Weaver*, not *Peschel* in its analysis, Atlantis and Iofina persuasively argue that the established law in Montana for piercing the veil of corporations, and

in particular, the first prong of the test involving the alter ego or agent analysis and the 14 factors set forth in *Peschel*, supra, are not appropriate for LLCs. [5] Atlantis and Iofina highlight the distinctions between corporations and LLC's to support this argument. For example, Atlantis and Iofina note that, while corporations are generally required to observe a variety of formalities in their governance and operations, LLCs are not. An LLC may consist of a single member. MCA § 35-8-201(1). An LLC can be managed directly by its members instead of managers or officers and directors. MCA § 35-8-202(e)(ii). In a member-managed LLC, a member is an agent of the LLC for the purposes of its business or affairs. MCA § 35-8-301(1). LLCs are not required to have an operating agreement. MCA § 35-8-109(1). Finally, and importantly, "the failure of a limited liability company to observe usual company formalities or requirements relating to the exercise of its company powers or management of its business is not a ground for imposing personal liability on the members or managers of the limited liability company." MCA § 35-8-304(2).

While there is a compelling logic to Iofina and Atlantis' argument, ultimately the distinction in the competing approaches does not matter because Baldwins cannot satisfy the second prong of either test. Under *Peschel*, Baldwin must show that Iofina used Atlantis as a "subterfuge to defeat public convenience, justify wrong or perpetrate fraud." *Weaver* requires that Baldwins show not only that the LLC was operated as an empty shell, but that it was operated in this fashion in order to "perpetuate fraud and avoid personal responsibility."

---

[5] According to the official Comments to the Montana Limited Liability Company Act, "Courts should not pierce the limited liability company veil merely as a result of failure to follow normal formalities required of a corporation." *Limited Liab. Co. Subcommittee of the State Bar of Mont., Comments to the Montana Limited Liability Company Act* § 23, at 10 (1993); see also Steven C. Bahls, *Application of Corporate Common Law Doctrines to Limited Liability Companies*, 55 Mont. L. Rev. 43 (1994).

Baldwins' have failed to point to any indicia of a subterfuge to defeat public convenience, wrongdoing, fraud or efforts to avoid personal responsibility.

Instead, Baldwins admit that they "have no reason to believe that Iofina was merely using Atlantis as a subterfuge, or using Atlantis to defeat public convenience[.]" *See* ECF No. 22, p.8. In addition, Baldwins "admit that they have no reason to believe that Iofina was . . . using Atlantis to . . . commit crime, justify wrong or perpetuate fraud." *Id*. Finally, "Baldwins concede that Atlantis and Iofina were not out to cheat them." *Id*. Baldwins sole argument is that notwithstanding their admissions, Iofina's undercapitalization of Atlantis from its inception is indicative of bad faith sufficient to pierce the corporation veil. Under the specific facts of this case, the Court disagrees.

Baldwins rely on *E.C.A. Environ. Management v. Toenyes* (1984) 208 Mont. 336, 679 P.2d 213 and *Peschel Family Trust v. Colonna*, 2003 MT 216, 317 Mont. 127, 75 P.3d 793, and conclude, "the creation of an undercapitalized shell subsidiary, that was not capable of satisfying its liability for a breach of contract, was sufficient to satisfy the requirements of the second prong." *Peschel Family Trust*, ¶ 37 (citing *Toenyes*, 208 Mont. at 348, 679 P.2d at 219). This Court does not consider Baldwins reliance on *Peschel* persuasive. The *Peschel* Court made the following specific findings to support the conclusion that Baldwins urge this Court to adopt (i.e., that undercapitalization is sufficient for satisfying the second prong):

> Only three meetings were held concerning corporate decisions over a nine-year period; Colonna exercised absolute authority over all corporate activities as the sole director and officer; Colonna was the Corporation's sole shareholder; Colonna loaned the Corporation significant sums of money indicating that the Corporation was undercapitalized and unable to meet its day-to-day obligations; payments were made directly from corporate accounts to satisfy Colonna's personal obligations under the guise that they were loan repayments; and there are no records indicating that Colonna was an employee of the Corporation or that he received wages. Moreover, Colonna personally benefitted from suspect corporate transactions the vehicle lease and the Corporation's ten-year lease renting Colonna's own property. In each instant he was on both sides of the transaction

12

and realized a personal benefit.

*Peschel Family Trust*, ¶ 30. In this case there is no evidence of self-dealing by Dorn, Atlantis, or Iofina. To the contrary, the record shows that Baldwins were paid $459,000, and by December 2015, the Atlantis project was operating at a loss of $419,263. Unlike the dentist in *Peschel* who realized a benefit, Atlantis and Iofina realized no benefits, and suffered a loss.

Having scrutinized the facts in *Peschel*, this Court is unwilling to conclude that *Peschel* is similar to this case, as urged by Baldwins. The uncontested facts show that Atlantis was a start-up company formed by Iofina to develop a fresh water depot. Atlantis complied with applicable law governing LLCs. Atlantis' business model was dependent upon receiving a water permit. Iofina infused adequate capital into Atlantis for it to satisfy its obligations for over two and one-half years. Baldwins were paid $459,000, while Atlantis pursued its water permit. Only after it was clear that the water permit could not be obtained, Atlantis stopped paying Baldwins, and breached the contract.[6] Atlantis never progressed beyond the start-up phase because despite its best efforts, the DNRC denied its water permit application and the District Court affirmed the DNRC's denial of the water permit. These facts, even without consideration of Baldwins' concessions regarding Atlantis and Iofina, distinguish this case from *Peschel*.

Similarly, Baldwins' reliance on *Toenyes*, ignores the distinctions between the facts of this case and the facts before the *Toenyes* Court. In *Toenyes*, a subsidiary transferred its assets to the parent company in an attempt to avoid its underlying contractual obligations. In this case, Atlantis transferred nothing to Iofina. This case is also distinguishable from *Drilcon, Inc. v. Roil*

---

[6] It is worth noting that not all contract breaches are bad. The Montana Supreme Court has observed, "And such a breach is not necessarily a bad thing; to the contrary, courts as well as scholars have for more than two decades heralded such an 'efficient breach' as an essential free-market tool that maximizes net economic gain." *Conagra v. Nierenberg*, (2000) 301 Mont. 55, 78, 7 P.3d 369, 384.

13

*Energy Corp., Inc.*, (1988) 230 Mont. 166, 749 P.2d 1058, another case cited by Baldwins. The *Roil* Court was tasked with considering whether constructive fraud is sufficient to pierce the corporate veil. The *Roil* Court held that "either actual fraud or constructive fraud may be sufficient to pierce the corporate veil in a given case." *Roil.,* 230 Mont. at 176, *749* P.2d at 1064. Next, the *Roil* Court concluded that, "[a]lthough there is no evidence that White used Roil to defeat 'public convenience,' we find that there was also substantial credible evidence of actual fraud, constructive fraud, and of White's using the corporate entity to justify wrong." *Roil,* 230 Mont. at 177, 749 P.2d at 1064. In this case, the record is devoid of any allegation, much less evidence that Atlantis was utilized by Iofina or Dorn for purposes of fraud, constructive fraud, or to justify wrong.

This Court explained in *In re Storer*, 380 B.R. at 234, that "piercing the corporate veil is an equitable remedy, used to curb injustices resulting from the improper use of a corporate entity. Because the remedy is equitable, no concrete formula exists under which a court will disregard the separate identity of the corporate entity." *In re Storer*, 380 B.R. at 233. *See also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 1661, 155 L.Ed.2d 643 (2003) (advising that piercing the veil is "the rare exception, applied in the case of fraud or certain other exceptional circumstances . . . and usually determined on a case-by-case basis"). Notably, in *Storer*, after concluding that the entity was the principal's alter ego, the *Storer* Court concluded it was not appropriate to disregard the "separate and distinct identity of Lynxx" because there was no showing that the entity had not been used as a subterfuge to perpetrate a fraud. *In re Storer*, 380 B.R.at 234. The circumstances here are neither rare nor exceptional. This case is like *Storer*, and even if Baldwins satisfied the first prong[7], there simply is not the slightest scintilla of

---

[7] Although the Court did not discuss the 14 factors under *Peschel*, or the first prong under

evidence tending to establish the second prong, that Iofina and Atlantis acted improperly, engaged in fraud, constructive fraud, or used the entity to justify wrong.

The Baldwins present no evidence that the relationships among Iofina and Atlantis were created in bad faith or for purposes of allowing Atlantis to avoid liability for their actions. Rather, the Baldwins' acknowledge that Atlantis was not used by Iofina as a subterfuge to defeat public convenience, to justify wrong, or to perpetrate fraud and that Atlantis and Iofina were not out to cheat them. As a result, the Court concludes that under both the standard articulated by the Montana Supreme Court in *Peschel* and in *Weaver*, disregarding the separate and distinct identity of Atlantis is not appropriate. Therefore, the Baldwins' alter ego claim against Iofina fails.

The Baldwins do not dispute that their claim of damages against Atlantis are limited by 11 U.S.C. § 502(b)(6). However, the Baldwins maintain that "the purpose of this entire action is to obtain a judgment against Iofina." And, since Iofina is not the debtor, the limitations of 11 U.S.C. § 502(b)(6) would not apply. However, having concluded that Iofina and Atlantis are entitled to summary judgment, this Court concludes that the Baldwins' claim against Atlantis is limited by 11 U.S.C. § 502(b)(6).

For the reasons discussed above,

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment filed August 28, 2018, at ECF No. 16 is denied.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment filed August 28, 2018, at ECF No. 19 is granted; Defendant Iofina Resources, Inc. is entitled to

---

*Weaver*, because it was clear Baldwins could not satisfy the second prong, had the Court discussed the first prong in depth, its analysis would have concluded that Iofina and Atlantis complied with Montana law applicable to LLCs.

judgment as a matter of law because Plaintiffs have made no showing that the corporate veil should be pierced (or the separate and distinct identity of Atlantis be disregarded), Iofina Resources, Inc. is not the alter ego of Atlantis Water Resources, LLC; and pursuant to 11 U.S.C. 502(b)(6), Plaintiffs' allowable damages against the Debtor, Atlantis Water Solutions, LLC are limited to $105,000.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana